UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 13-23412-CIV-GAYLES/HUNT

SHARON DANIELS
o/b/o A.J., a minor,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security Administration,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on Plaintiff's Motion for Summary Judgment, ECF No. 20, and Defendant's Motion for Summary Judgment, ECF No. 22.[1]  The Honorable William J. Zloch referred these motions to the undersigned for a Report and Recommendation.  ECF No. 25; see also 28 U.S.C.A. § 636; S.D. Fla. L.R., Mag. R. 1.  On June 30, 2014, this case was transferred to United States District Judge Darrin P. Gayles, but the referral has not changed.  ECF No. 25.  Upon thorough review of the record, both Plaintiff's and Defendant's Motions, and the responses and replies thereto, the undersigned respectfully RECOMMENDS that Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.  The issue before this Court is whether the record

---

[1] Defendant's Motion for Summary Judgment and Defendant's Response to Plaintiff's Motion for Summary Judgment are the same document under two separate ECF numbers:  ECF No. 22 and ECF No. 23, respectively.

contains substantial evidence to support the denial of childhood supplemental security income ("SSI") to Plaintiff.

## BACKGROUND

### I. Procedural History

On May 2, 2011, A.J.'s ("Plaintiff") mother protectively filed for childhood SSI on A.J.'s behalf, alleging disability as of April 16, 2011. ECF No. 14 at 152. The Florida Disability Determination Services found A.J. was not disabled initially and upon reconsideration. ECF No. 14 at 105–06. On July 28, 2011, Plaintiff requested a hearing before an administrative law judge ("ALJ"). ECF No. 14 at 112. On September 5, 2012, Plaintiff (who was represented by an attorney), Plaintiff's mother, and a medical expert testified at a hearing before ALJ Lornette Reynolds. ECF No. 14 at 46–77. On September 26, 2012, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act, and therefore was not eligible for childhood SSI. ECF No. 14 at 23–41. The Appeals Council denied Plaintiff's request to review the ALJ's decision, thus making the ALJ's decision final. ECF No. 14 at 5–10. Plaintiff appeals from the ALJ's decision.[2]

### II. Facts

#### A. Hearing Impairments

On March 20, 2007, Dr. Harold S. Stinson diagnosed Plaintiff with speech delay and referred Plaintiff to speech therapy. ECF No. 14 Attach. 1 at 323, 376.

On April 26, 2007, Plaintiff was examined at Children's Speech Center Inc. ECF No. 14 Attach. 1 at 330. Plaintiff was asleep during most of the evaluation, but he was

---

[2] For purposes of this Report and Recommendation, the "Commissioner," the "Social Security Administration," and the "ALJ" are used interchangeably.

2

noted as using gestures and babble or jargon to communicate, and having a vocabulary of fewer than ten words. ECF No. 14 Attach. 1 at 330. The evaluating doctor recommended that Plaintiff attend therapy sessions twice a week for thirty minutes each, and that Plaintiff undergo psycho-education evaluation and audiological evaluation, but there are no records indicating whether Plaintiff actually underwent any of these treatments or tests. ECF No. 14 Attach. 1 at 331.

As of August 11, 2010, Plaintiff's speech had improved and he was no longer in speech therapy. ECF No. 14 at 294.

### B. Lisa Hill

Lisa Hill was Plaintiff's kindergarten teacher. ECF No. 14 at 207. On May 19, 2011, Ms. Hill completed a teacher questionnaire regarding Plaintiff. ECF No. 14 at 207. In the questionnaire, Ms. Hill indicated she knew Plaintiff for a total of two-and-a-half months and that Plaintiff was not in any special education classes or taking any medications. ECF No. 14 at 207, 209. Ms. Hill also indicated that Plaintiff had very serious problems in four areas of acquiring and using information[3] and in three areas of attending and completing tasks;[4] but, she stated that Plaintiff had no issues in the areas of interacting and relating with others, moving about and manipulating objects, or caring for himself. ECF No. 14 at 208–12. Ms. Hill indicated that Plaintiff must be asked a couple of times to complete his assignments, and directions must be given to him often. ECF No. 14 at 207. Ms. Hill also stated that Plaintiff takes a long time to complete

---

[3] The very serious problems were: (1) Reading and comprehending written material; (2) understanding and participating in class discussions; (3) providing organized oral explanations and adequate descriptions; and (4) recalling and applying previously learned material. ECF No. 14 at 208.

[4] The very serious problems were: (1) Focusing long enough to finish assigned work activity; (2) refocusing to task when necessary; and (3) carrying out multi-step instructions. ECF No. 14 at 209.

3

assignments and that when it is time for him to apply something, he does not.  ECF No. 14 at 209.

Six days later, on May 25, 2011, Ms. Hill completed another teacher questionnaire.  ECF No. 14 at 216.  Ms. Hill indicated that Plaintiff had serious problems in two areas of acquiring and using information[5] and in one area of attending and completing tasks,[6] but no issues in the areas of interacting and relating with others, moving about and manipulating objects, or caring for himself.  ECF No. 14 at 219–21.

### C.  Dr. Carol Kaufman

On June 11, 2011, Plaintiff saw Dr. Carol Kaufman at the request of the Office of Disability Determinations.  ECF No. 14 Attach. 1 at 36.  At the time of the visit, Plaintiff was not taking any medications or receiving any treatment for disability.  ECF No. 14 Attach. 1 at 36.  Plaintiff appeared as cooperative, friendly, polite, and with appropriate eye contact.  ECF No. 14 Attach. 1 at 37.  Plaintiff sometimes mumbled, but his speech was otherwise unremarkable.  ECF No. 14 Attach. 1 at 37.  Dr. Kaufman administered the Wechsler Preschool and Primary Scale of Intelligence–Third Edition, which showed that Plaintiff's verbal IQ was 78, his performance IQ was 73, and his full-scale IQ was 73.  ECF No. 14 Attach. 1 at 37.  According to Dr. Kaufman, Plaintiff's full-scale IQ was within the borderline range of intellectual functioning, as was his cognitive functioning.  ECF No. 14 Attach. 1 at 37.  Dr. Kaufman found Plaintiff had a learning disability in mathematics, but despite his poor reading skills, his reading scores were proportionate to his performance on the Wechsler test.  ECF No. 14 Attach. 1 at 39.  Dr. Kaufman

---

[5] (1) Reading and comprehending written material; and (2) providing organized oral explanations and adequate descriptions.  ECF No. 14 at 217.

[6] Completing work accurately without careless mistakes.  ECF No. 14 at 218.

4

diagnosed Plaintiff with a mathematics disorder and borderline intellectual functioning. ECF No. 14 Attach. 1 at 39.

### D.  Dr. Patricia Boger and Dr. Claire Huisentruit

Drs. Patricia Boger and Claire Huisentruit are state agency mental health experts.

On June 24, 2011, Dr. Boger, a non-treating doctor, completed a childhood disability evaluation form.  ECF No. 14 Attach. 1 at 41.  Dr. Boger found that Plaintiff suffered from marked limitations only in the area of acquiring and using information, but that Plaintiff had less than marked or no limitations in the remaining domains.  ECF No. 14 Attach. 1 at 41–44.  Dr. Boger noted that Plaintiff had very serious problems with reading and serious problems with math, but no other problems, including no problems getting along with others.  ECF No. 14 Attach. 1 at 46.  Dr. Boger concluded that Plaintiff's impairments did not functionally equal a listing.  ECF No. 14 Attach. 1 at 45.

On July 20, 2011, Dr. Huisentruit, also a non-treating doctor, completed a childhood disability evaluation form.  ECF No. 14 Attach. 1 at 47.  Dr. Huisentruit found that Plaintiff had marked limitations in the domain of acquiring and using information but less than marked or no limitations in all other domains.  ECF No. 14 Attach. 1 at 49–50. Dr. Huisentruit stated that she believed Plaintiff operated on a level above borderline intellectual functioning, as evidenced by the apparent "scatter" from the Wechsler testing, and the fact that Plaintiff's grades reflect satisfactory math scores.  ECF No. 14 Attach. 1 at 52.  Dr. Huisentruit concluded that Plaintiff's impairments did not functionally equal a listing.  ECF No. 14 Attach. 1 at 51.

### E.  Dr. Maria Gorelick

On September 19, 2011, Dr. Maria Gorelick, a treating physician, wrote a letter stating:  "To whom it may concern:  The above child has been diagnosed with ADHD (314101) and strongly suspect [sic] [learning disability] (31519).  Thank you."  ECF No. 14 Attach. 1 at 56.

On October 17, 2011, Plaintiff was seen by Dr. Gorelick.  ECF No. 14 Attach. 1 at 152.  Dr. Gorelick noted that Plaintiff's mother said Plaintiff has "been doing a lot better," and that Plaintiff's teacher said Plaintiff was calmer and paid attention more often.  ECF No. 14 Attach. 1 at 151.  Dr. Gorelick also noted Plaintiff appeared well-groomed, had fair eye contact, was alert, his memory and concentration were impaired, and his speech was coherent and fluent.  ECF No. 14 Attach. 1 at 151.  Dr. Gorelick diagnosed Plaintiff with ADHD and prescribed him Adderall.  ECF No. 14 Attach. 1 at 152.

On November 17, 2011, Plaintiff was seen by Dr. Gorelick again.  ECF No. 14 Attach. 1 at 153.  Dr. Gorelick noted that Plaintiff's mother said Plaintiff received a bad report card, including a D in reading and an F in math.  ECF No. 14 Attach. 1 at 153.  Dr. Gorelick also noted Plaintiff appeared well-groomed, had fair eye contact, was alert, his memory and concentration were impaired, and his speech was coherent and fluent.  ECF No. 14 Attach. 1 at 153.  Dr. Gorelick diagnosed Plaintiff with ADHD and prescribed him Adderall.  ECF No. 14 Attach. 1 at 154.

On March 8, 2012, Plaintiff saw Dr. Gorelick again after not seeing her for four months.  ECF No. 14 Attach. 1 at 155.  Dr. Gorelick noted that Plaintiff's mother said Plaintiff has had problems staying on task and completing his work and that he got distracted easily.  ECF No. 14 Attach. 1 at 155.  Dr. Gorelick stated these problems

were because of Plaintiff's noncompliance with treatment.  ECF No. 14 Attach. 1 at 155. Dr. Gorelick also noted Plaintiff appeared well-groomed, had fair eye contact, was alert, his memory and concentration were impaired, and his speech was coherent and fluent. ECF No. 14 Attach. 1 at 155.  Dr. Gorelick diagnosed Plaintiff with ADHD and prescribed him Adderall.  ECF No. 14 Attach. 1 at 156.  Dr. Gorelick also wrote a letter indicating that Plaintiff was diagnosed with ADHD, was taking Adderall for it, and that he would benefit from a smaller class with direct instruction and extra time to complete work and tests.  ECF No. 14 Attach. 1 at 185.

On April 10, 2012, Plaintiff was again seen by Dr. Gorelick.  ECF No. 14 Attach. 1 at 157.  Dr. Gorelick noted that Plaintiff said he was "doing good."  ECF No. 14 Attach. 1 at 157.  Dr. Gorelick stated that Plaintiff was doing better and was able to do his homework.  ECF No. 14 Attach. 1 at 157.  Dr. Gorelick diagnosed Plaintiff with ADHD and prescribed him Adderall.  ECF No. 14 Attach. 1 at 158.

On June 14, 2012, Plaintiff was again seen by Dr. Gorelick, who indicated that Plaintiff's mother said Plaintiff would be held in the first grade and got an F in reading. ECF No. 14 Attach. 1 at 159.  Dr. Gorelick diagnosed Plaintiff with ADHD and prescribed him Adderall.  ECF No. 14 Attach. 1 at 160.

On August 7, 2012, Plaintiff visited Dr. Gorelick again.  ECF No. 14 Attach. 1 at 161.  Dr. Gorelick noted that Plaintiff said he just finished summer camp, and indicated that Plaintiff "did good in summer camp," and "kept the medication during summer." ECF no. 14 Attach. 1 at 161.  Dr. Gorelick diagnosed Plaintiff with ADHD and prescribed him Adderall.  ECF No. 14 Attach. 1 at 162.

### F. School Behavior Intervention Plan

In March and June 2012, Plaintiff's school staff assessed that his reading struggles contributed to his behavior at school and indicated that Plaintiff was not following directions in order to escape from doing his work, as indicated by his ability to follow directions and complete his work in his art class, which he seemed to enjoy. ECF No. 14 Attach. 1 at 62–64. A plan was developed to give Plaintiff more individualized instruction and repeated direction by having him attend summer camp and repeat the first grade. ECF No. 14 Attach. 1 at 66–71, 159–61. By the end of the summer, Plaintiff's behavior was improving and he was tolerating his medication. ECF No. 14 Attach. 1 at 159–61.

### G. School Records

Plaintiff's report card for his first-grade year of school indicates that he had trouble in reading, language arts, and math, evidenced by his failing grades in those subjects, and performed much better in the other subjects, getting A's or B's. ECF No. 14 Attach. 1 at 59. The report card also shows that as the school year progressed from August of 2011 to June of 2012, Plaintiff's effort and conduct in class improved as he adjusted to his medication; in the last quarter of the school year Plaintiff's effort was rated as satisfactory in three subjects and outstanding in five, and his conduct was excellent in all subjects.[7] ECF No. 14 Attach. 1 at 59.

### H. Dr. Bradley Bradford

Dr. Bradley Bradford testified at the September 5, 2012, hearing before the ALJ as an impartial medical expert. ECF No. 14 at 70. Based on his review of the evidence

---

[7] For comparison, in the first quarter of school, Plaintiff had insufficient effort in mathematics, with a mix of satisfactory and outstanding effort in other subjects, and had excellent conduct in only three subjects. ECF No. 14 Attach. 1 at 59.

and upon listening to the testimonies of Plaintiff and Plaintiff's mother, Dr. Bradford opined that Plaintiff suffers from the medically determinable impairments of ADHD, speech delay, and a learning disorder. ECF No. 14 at 75–76. Dr. Bradford stated that Plaintiff functioned in a borderline intellectual way regardless of his IQ scores. ECF No. 14 at 75. Dr. Bradford further stated that Plaintiff was language impaired, had significant obesity, ADHD, and a learning disability, and for those reasons, meets the relevant listing. ECF No. 14 at 75. Dr. Bradford concluded that Plaintiff's prognosis was good, indicating Plaintiff should have marked improvement within three years. ECF No. 14 at 76.

### I. Hearing Testimony

Both Plaintiff and Plaintiff's mother testified at the September 5, 2012 hearing before the ALJ. Plaintiff's mother testified that Plaintiff was being retained in first grade and was enrolled in regular classes, but that she had signed the paperwork for Plaintiff's admission into special education classes. ECF No. 14 at 53–54. Plaintiff's mother testified that Plaintiff is hyper, does not play with other children, and does not perform as expected at school. ECF No. 14 at 56. Plaintiff's mother indicated that Plaintiff had been diagnosed with ADHD but was taking Adderall for it, which she administered to Plaintiff daily in his applesauce. ECF No. 14 at 57, 65. Plaintiff's mother further testified that the medication helps Plaintiff focus and keeps him from wandering off, and that Plaintiff's teacher indicated improvement with Plaintiff's behavior. ECF No. 14 at 57.

Plaintiff himself testified that he enjoyed watching cartoons on T.V. ECF No. 14 at 58. Plaintiff also testified that he does play with other children; specifically, Plaintiff indicated that he plays hide and seek and other games with his cousins James and

Deon and his friend Willy. ECF No. 14 at 58–59. Plaintiff testified he also plays video games and helps with chores at home. ECF No. 14 at 60, 62–63. Plaintiff indicated that he enjoys going to the library and recess at school, and that he likes reading. ECF No. 14 at 61–62. Plaintiff stated that he feels good when he takes his medication. ECF No. 14 at 63.

### III. Social Security Framework and Decision of the ALJ

A person under the age of 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 1382c(a)(3)(C)(I). The Social Security Administration has established a three-step sequential evaluation to determine whether an individual under the age of 18 is disabled. 20 C.F.R. § 416.924(a).

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"), as defined by the statute. See 20 C.F.R. §§ 416.972(a), .972(b), .974–.975. If the claimant engages in SGA, then he or she is not disabled, regardless of his or her medical condition(s), age, education, or work experience. 20 C.F.R. § 416.924(b). If the claimant is not engaged in SGA, then the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924(a). For a claimant under the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination

of slight abnormalities that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the claimant does not have a medically determinable severe impairment or combination of impairments, then he or she is not disabled under the Act, and the inquiry ends. If the claimant does have a severe impairment or combination of impairments, the analysis proceeds to the third step. 20 C.F.R. § 416.924(a).

At step three, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals one of the listings. 20 C.F.R. § 416.924(a); 20 C.F.R. Part 404, Subpart P, Appendix 1. In making this determination, the ALJ must consider the combined effect of all medically determinable impairments, even those that are not severe. 20 C.F.R. §§ 416.923, .924a(b)(4), .926a(a) & (c). If the claimant has an impairment or combination of impairments that meets, medically equals the severity of, or functionally equals a listing, and the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months, the claimant is presumed to be disabled; if not, then the claimant is not disabled. 20 C.F.R. § 416.924(d)(1)–(2).

In determining whether an impairment or combination of impairments functionally equals a listing, the ALJ must assess the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and well-being. 20 C.F.R. § 416.926a(b)(1)(i)–(vi). In making this assessment, the ALJ must compare how appropriately, effectively, and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b)(2).

To functionally equal a listing, the claimant's impairment or combination of impairments must result in "marked" limitations[8] in two domains of functioning or "extreme" limitation[9] in one domain.  20 C.F.R. § 416.926a(d).

    Here, the ALJ applied this three-part disability test and determined that Plaintiff was not disabled.  ECF No. 14 at 41.  The ALJ found that Plaintiff had certain severe impairments, specifically "attention deficit hyperactive disorder (ADHD) and suspected learning disorder."  ECF No. 14 at 29.  However, the ALJ concluded that Plaintiff's impairments—individually or in combination—did not meet, medically equal, or functionally equal any of the impairments found in the "Listing of Impairments" located in 20 C.F.R. Part 404, Subpart P, Appendix 1.  ECF No. 14 at 30.

    The ALJ found that Plaintiff had the following limitations with regard to the six domains of functioning:  (1) Less than marked limitation in acquiring and using

---

[8] Social Security regulation 20 C.F.R. § 416.926a(e)(2) explains that a claimant has a "marked limitation" in a domain when the impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. "Marked limitation" also means:  (1) a limitation that is "more than moderate" but "less than extreme"; (2) the equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean; (3) a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score; and (4) for the domain of health and physical well-being, frequent episodes of illness because of the impairment(s) or frequent exacerbations of the impairment(s) that result in significant, documented symptoms or signs that occur:  (a) on an average of three times a year, or once every four months, lasting two weeks or more; (b) more often than three times in a year or once every four months, but not lasting for two weeks; or (c) less often than an average of three times a year or once every four months but lasting longer than two weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.  20 C.F.R. § 416.926a(e)(2).

[9] Social Security regulation 20 C.F.R. § 416.926a(e)(3) explains that a claimant has an "extreme limitation" in a domain when the impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. "Extreme limitation" also means:  (1) a limitation that is "more than marked"; (2) the equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean; (3) a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score; and (4) for the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.  20 C.F.R. § 416.926a(e)(3).

information; (2) less than marked limitation in attending and completing tasks; (3) no limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for himself; and (6) no limitation in health and physical well-being.  ECF No. 14 at 34–41.

The ALJ concluded that Plaintiff "has not been disabled, as defined in the Social Security Act, since May 2, 2011, the date the application was filed."  ECF No. 14 at 41.  As a result, the ALJ found Plaintiff was not entitled to childhood SSI.  ECF No. 14 at 41.

## ANALYSIS

### I.   Standard of Review

Judicial review of the factual findings in a disability case is "limited to an inquiry into whether [the record] contains substantial evidence to support the findings of the [ALJ] and whether the correct legal standards were applied."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  The ALJ's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C.A. § 405(g).  "Substantial evidence is more than a scintilla, and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997)) (internal quotation marks omitted).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the ALJ's decision.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  The court may not reweigh evidence or substitute its judgment for that of the ALJ.  See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates

against the ALJ's decision, the reviewing court must affirm if the decision is supported by substantial evidence.  Id.

The ALJ's legal conclusions, however, are reviewed de novo.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007) (citing Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)).  Reversal is required if the ALJ fails to apply the correct law or to provide sufficient reasoning for the decision.  Id. (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145–46 (11th Cir. 1991)).

## II.  Dr. Bradford's Testimony

Plaintiff's first argument with the ALJ's decision is that the ALJ erred in discounting Dr. Bradford's opinion without giving reasons for doing so.  ECF No. 20 at 4.  After reviewing Dr. Bradford's testimony at the hearing and the relevant evidence in the record, the undersigned finds that the ALJ properly discounted Dr. Bradford's testimony.

It is well settled that "[s]ubstantial weight must be given to the opinions, diagnoses and medical evidence of a treating physician unless there is good cause to do otherwise."  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  However, when the opinion at issue comes from a non-treating physician, the ALJ will weigh the medical opinion using several factors:  (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors.  20 C.F.R. § 404.1527(c)(1)–(6).

In the instant case, though the ALJ did not explicitly run through a checklist of all of these factors, it is clear she weighed Dr. Bradford's testimony against these factors and came to a determination that his opinion should be discounted.  ECF No. 14 at 33.  In her decision, the ALJ specifically stated that "Dr. Bradford is not a treating or

examining source, and therefore his opinion is not entitled to as much weight." ECF No. 14 at 33.  Further, the ALJ noted that Dr. Bradford's opinion is inconsistent with the medical evidence of record.  ECF No. 14 at 33.  For example, the ALJ noted that Dr. Bradford's opinion of Plaintiff was based partly on Plaintiff's "significant obesity," which was not discussed in any other medical records as being a limiting factor or even existing.  ECF No. 14 at 33, 75.  Dr. Bradford's testimony is further rebutted by other evidence in the record.  Dr. Bradford testified that Plaintiff met the listing for ADHD,[10] but his finding is inconsistent with evidence such as (1) Plaintiff's first-grade report card, which shows improvement in grades and in conduct and effort as Plaintiff grew more accustomed to his ADHD medication, ECF No. 59; (2) Dr. Gorelick's treatment notes which indicate that Plaintiff felt good while taking the medication, and that Plaintiff's mother noticed he was able to concentrate and complete work, ECF No. 14 Attach. 1 at 151; and (3) Plaintiff's teacher's reports, which noted that Plaintiff was improved since he started taking Adderall, ECF No. 14 Attach. 1 at 151.  The evidence in the record shows that Plaintiff did not have marked inattention, impulsiveness, or hyperactivity, all three of which are required to sustain a showing of ADHD under the listings.  20 C.F.R. Part 404, Subpart P, Appendix 1.  Dr. Bradford's testimony is also inconsistent with the reports of Drs. Boger and Huisentruit, who found that Plaintiff only had marked

---

[10] The criteria for listing 112.11, Attention Deficit Hyperactivity Disorder (ADHD), are the following:
> The required level of severity for these disorders is met when the requirements in both (A) and (B) are satisfied.  (A) Medically documented findings of all three of the following:  (1) Marked inattention; (2) [m]arked impulsiveness; and (3) [m]arked hyperactivity; AND (B) . . . for children (age 3 to attainment of age 18), . . . at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found that Plaintiff did not meet all three of the (A) requirements, and so did not proceed to (B).

15

limitations in the domain of acquiring and using information, but less than marked limitations in all other domains.  ECF No. 14 Attach. 1 at 41–45, 49–50.

Thus, the undersigned finds that the ALJ's decision to discount Dr. Bradford's testimony was supported by substantial evidence.

### III. Ms. Hill's Opinion

Plaintiff next argues that the ALJ's decision should be reversed or remanded for further proceedings because the ALJ failed to identify what weight was given to the opinion of Ms. Hill, Plaintiff's kindergarten teacher.  ECF No. 20 at 19.  Plaintiff's argument is unpersuasive because the ALJ is not required to indicate what weight she gave to a non-medical source.

Teachers are not considered medical sources under the Social Security regulations.  20 C.F.R. § 416.913(d).  Specifically, the regulations state "we may also use evidence from other sources to show the severity of your impairment(s), [including] . . . [e]ducational personnel (for example, school teachers)."  Id.  These requirements differ from those regarding medical sources in that they do not indicate that the ALJ is required to state with particularity the weight given to the sources.  Compare 20 C.F.R. § 404.1527(c) (prescribing how the ALJ will weigh medical opinions), with 20 C.F.R. § 416.913(d) (prescribing that non-medical opinions will be considered, but mentioning nothing about affording them a particular weight); see also Reed v. Astrue, No. 09-0149-KD-N, 2009 WL 3571699, at *3 (S.D. Ala. Oct. 26, 2009) ("There is no requirement in the Social Security regulations or rulings that an ALJ assign any weight to non-medical sources, only that the evidence be considered.").

Thus, the undersigned finds that the ALJ was not required to indicate what weight she gave to Plaintiff's kindergarten teacher, Ms. Hill, and the ALJ's analysis with regard to that evidence is supported by substantial evidence.

**IV.    Dr. Gorelick's Opinions**

Plaintiff's final argument is that the ALJ's decision is not based on substantial evidence because the ALJ failed to indicate what weight was afforded to Dr. Gorelick, Plaintiff's treating physician.  ECF No. 20 at 19.  The undersigned finds that though the ALJ did not explicitly state what weight was given to Dr. Gorelick, the ALJ did not intend to give Dr. Gorelick less weight than a treating physician would ordinarily receive.

As was stated above in the analysis for Dr. Bradford's testimony, "[s]ubstantial weight must be given to the opinions, diagnoses and medical evidence of a treating physician unless there is good cause to do otherwise."  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Additionally, there are various factors an ALJ must use when considering what weight to afford medical opinions.  20 C.F.R. § 404.1527(c)(1)–(6).[11]  The ALJ made no effort to show "good cause" why Dr. Gorelick's opinions should be discounted, and she apparently had no intention of discounting those opinions.

The ALJ clearly intended to give controlling weight to the opinion of Dr. Gorelick. The controlling weight is first evidenced by the ALJ's omission of any indication that she was discounting Dr. Gorelick's opinion in her decision.  Cf. Sharfarz v. Bowen, 825 F.2d 278, 279–80 (11th Cir. 1987) (holding that ALJ must afford considerable weight to treating physician unless "good cause" is shown for not doing so).  The ALJ relied on Dr. Gorelick's reports several times throughout her decision.  Specifically, the ALJ noted

---

[11] (1) Examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors.

17

that Dr. Gorelick was Plaintiff's treating physician who diagnosed Plaintiff with ADHD, ECF No. 14 at 32, that Plaintiff had a constant, ongoing treatment relationship with Dr. Gorelick, ECF No. 14 at 32, and that Dr. Gorelick made notes of Plaintiff's improvements with medical treatment for his ADHD, ECF No. 14 at 32–33.  Further, the ALJ used Dr. Gorelick's opinions in her reasoning for why she discounted Dr. Bradford's testimony.  ECF No. 33–34.  Specifically, the ALJ indicated that Dr. Bradford's testimony was inconsistent with Dr. Gorelick's findings that Plaintiff's functioning and conduct improved after beginning treatment with Adderall.  ECF No. 14 at 34.

Though Plaintiff cites case law requiring the ALJ to explain, with particularity, why it is discounting a treating physician's opinion, ECF No. 20 at 19, Plaintiff does not cite law requiring the ALJ to explain that it is giving controlling weight to same.  It is unnecessary for this Court to remand the instant case just so the ALJ can state that she gave Dr. Gorelick controlling weight when the ALJ's decision shows no evidence that the ALJ sought to give anything but controlling weight to Dr. Gorelick's opinions.  Thus, the undersigned finds that the ALJ's decision is supported by substantial evidence.

## RECOMMENDATION

Based on the foregoing, the undersigned finds that the decision of the ALJ is supported by substantial evidence and that the correct legal standards were applied. Therefore, the undersigned RECOMMENDS that Plaintiff's Motion for Summary Judgment, ECF No. 20, be DENIED and Defendant's Motion for Summary Judgment, ECF No. 22, be GRANTED.  The parties will have fourteen (14) days after being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  See 28

U.S.C.A. § 636(b)(1) (providing procedure for review of magistrate judge report and recommendation).  Failure to timely file objections shall bar the parties from a de novo determination by Judge Gayles of any issue covered in the Report and shall bar the parties from challenging, on appeal, the factual findings accepted or adopted by this Court, except upon grounds of plain error or manifest injustice.  See Thomas v. Arn, 474 U.S. 140, 145–53 (1985) (holding that party waives appellate review of magistrate judge's factual findings that were not objected to within period prescribed by 28 U.S.C. § 636(b)(1)); see also Dupree v. Warden, 715 F.3d 1295, 1300 (11th Cir. 2013) (holding that under current Eleventh Circuit Court rule: "[T]he failure to object limits the scope of our appellate review to plain error review of the magistrate judge's *factual findings*[; however,] failure to object to the magistrate judge's *legal conclusions* does not preclude the party from challenging those conclusions on appeal.").

DONE AND SUBMITTED at Fort Lauderdale, Florida this 7th day of August 2014.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable Darrin P. Gayles

All Counsel of Record